UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| American Builders Insurance Company Risk Retention Group, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Modern Classic Construction, LLC, Autumn Morris and Charles Morris <br><br> Defendants. | Case No.: 9:26-cv-00427-DCN <br><br><br> **PLAINTIFF'S DECLARATORY JUDGMENT COMPLAINT AGAINST DEFENDANTS** |

NOW COMES Plaintiff American Builders Insurance Company Risk Retention Group, Inc. (hereafter "Plaintiff") complaining of the Defendant Modern Classic Construction, LLC (hereafter "Defendant MCC"), Defendant Autumn Morris and Defendant Charles Morris (collectively "Defendant Morris") and alleges and states that:

Plaintiff files this Complaint pursuant to South Carolina Code Annotated §15-53-10, *et. seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201 and Federal Rule of Civil Procedure 57.

**PARTIES, JURISDICTION, & VENUE**

1. Plaintiff is registered to conduct business in the state of South Carolina and is domiciled in Alabama.

2. Defendant MCC is a limited liability company organized and existing pursuant to the laws of the state of South Carolina and is located in Beaufort County, South Carolina.

3. Defendant Morris are the owners of real property located in Beaufort County, South Carolina commonly known as 7 Bayley Point Lane, Hilton Head Island, SC (the "Property").

4. Defendant MCC and Defendant Morris are currently parties to that certain civil action pending in Beaufort County, South Carolina regarding the Property, styled as *Modern Classic Construction, LLC v. Autumn Morris and Charles Morris*, Beaufort County Court of Common Pleas, Civil Action Number 2024-CP-07-00753 (the "Underlying Action").

5. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

6. Jurisdiction and venue are proper.

## FACTUAL ALLEGATIONS

7. Plaintiff reincorporates by reference, as if set forth at length herein, Paragraphs 1 through 6.

### The Policies

8. On October 23, 2022, Plaintiff issued a commercial general liability policy to Defendant MCC, Policy # SBIC-019516-00, that was effective from October 23, 2022 to October 23, 2023 (the "2022 Policy"). A copy of the 2022 Policy is attached hereto as Exhibit "A."

9. On October 23, 2023, Plaintiff issued a commercial general liability policy to Defendant MCC, Policy # SBIC-019516-01, that was effective from October 23, 2023 to October 23, 2024 (the "2023 Policy"). A copy of the 2023 Policy is attached hereto as Exhibit "B."

10. On January 16, 2025, Plaintiff issued a commercial general liability policy to Defendant MCC, Policy # ABIC019562-00, that was effective from January 16, 2025 to January 16, 2026 (the "2025 Policy"). A copy of the 2025 Policy is attached hereto as Exhibit "C."

The Underlying Action

11. Defendant MCC maintains its principal place of business in Beaufort County, South Carolina and provides its customers construction related services.

12. In or about June 2023, Defendant MCC and Defendant Morris entered into an agreement whereby Defendant MCC agreed to provide labor, services and materials for the improvement of the Property in consideration for monetary payment by Defendant Morris (the "Agreement").  (See ¶¶ 9-10 in Defendant MCC's April 10, 2024 Complaint in the Underlying Action).

13. Payment disputes arose by and between Defendant MCC and Defendant Morris.  (Id. at ¶¶ 12-19).

14. On March 22, 2024, Defendant MCC filed a mechanic's lien against the Property.  (Id. at ¶ 20).

15. On April 10, 2024, Defendant MCC filed the Underlying Action seeking relief for Lien Foreclosure, Breach of Contract, and Unjust Enrichment.  (Id. at ¶¶ 24-38).

16. On June 14, 2024, Defendant Morris filed an Answer and Counterclaim in the Underlying Action (the "Counterclaim").

17. In pertinent part, the Counterclaim alleges:

   a. Defendant MCC performed work on the Property without approval from Defendant Morris and without consulting with or defining the scope of work prior to beginning work. (See ¶47 in Defendant Morris' June 14, 2024 Counterclaim in the Underlying Action);

   b. Defendant MCC did not obtain permits for any work on the Property from the Town of Hilton Head. (Id. at ¶48);

c. Defendant MCC failed to secure the necessary permits to perform the work at the Property. (Id. at ¶49);

d. Upon information and belief, Defendant MCC hired unskilled laborers to perform work which required a specialty contracting license at the Property. (Id. at ¶53);

e. Defendant MCC billed for work at the Property that was never performed. (Id. at ¶57);

f. Upon information and belief, Defendant MCC overbilled for work and/or material they claimed was performed and furnished but was not in fact performed or furnished at the Property. (Id. at ¶59);

g. Defendant MCC, their agents, servants, employees, and/or subcontractors were negligent, careless, willful, and wanton in failing to perform their work in accordance with good construction and design practices, the applicable building codes, approved renovation plans and specifications, the manufacturers' instructions, the industry standards, and in failing to perform their work in a careful, diligent, and workmanlike manner, free from latent defects, thereby breaching the above referenced duties by, but not limited to: Failing to perform the work according to the instructions of the property owner; Failing to perform the work in a workman like manner; Failing to properly remodel structural walls causing damage to the structure of the Residence; Failing to properly repair the garage doors; Failing to perform the work according to the plans, specifications, industry standards, applicable building codes, and the manufacturers' instructions; Performing work that was not authorized; Performing work that was not necessary; Performing work without requisite permits; Performing work without requisite

  municipal inspections; Performing work without requisite licensing; and For such other particulars that will be shown through discovery in this matter. (Id. at ¶61); and

  h. As a direct, foreseeable, and proximate result of the negligence, recklessness, and gross negligence of Defendant MCC, Defendant Morris has suffered significant damages, including but not limited to degradation of building components, failure of building parts and components, reduced property value, loss of use, and such other damages as will be shown during discovery in this matter. (Id. at ¶62).

18. The Counterclaim includes causes of action for Negligence/Recklessness/Gross Negligence, Unjust Enrichment, Violation of South Carolina Unfair Trade Practices Act, Breach of Implied Warranty of Workmanlike Services, Breach of Express and Implied Warranties, Declaratory Judgment, Accounting, and Slander of Title (Id. at ¶¶ 39-109).

19. On April 15, 2025, Plaintiff was provided with notice of the Underlying Action and the Counterclaim.

20. Since that time, Plaintiff has fulfilled its duty to defend Defendant MCC in the Underlying Action.

21. On November 19, 2025, Plaintiff provided Defendant MCC with written notice of reservation of rights with regard to the 2022 Policy and 2023 Policy, and written notice of claim denial with regard to the 2025 Policy. A copy of which is attached hereto as Exhibit "D."

## FOR A FIRST CAUSE OF ACTION

## (Declaratory Judgment Action – the 2022 Policy and the 2023 Policy)

22. Plaintiff reincorporates by reference, as if set forth at length herein, Paragraphs 1 through 21.

23. Plaintiff alleges there is no coverage and no duty to defend pursuant to the 2022 Policy and the 2023 Policy for the claims alleged in the Underlying Action.

### No Occurrence

24. The 2022 Policy and the 2023 Policy provide coverage for "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and the "bodily injury" or "property damage" occurs during the policy period." See Exhibits A and B.

25. The 2022 Policy and the 2023 Policy define "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Exhibits A and B.

26. The Counterclaim alleges causes of action for Unjust Enrichment, violations of the South Carolina Unfair Trade Practices Act, Breach of Implied Warranty of Workmanlike Services, Breach of Express and Implied Warranties, Declaratory Judgment, Accounting and Slander of Title. These causes of action are not based upon and do not allege occurrences and therefore there is no coverage pursuant to the 2022 Policy and the 2023 Policy.

### Work Product Exclusion

27. The 2022 Policy and the 2023 Policy exclude coverage for damage to Defendant MCC's work product. Specifically, the 2022 Policy and the 2023 Policy provide:

> [t]his insurance does not apply to: Damage to Your Product. 'Property damage' to 'your product' arising out of it or any part of it. Damage to Your

> Work. 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' 'Property damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

See Exhibits A and B.

28. The Counterclaim alleges damages to Defendant MCC's work product and therefore there is no coverage pursuant to the 2022 Policy and the 2023 Policy.

Contractual Liability Exclusion

29. The 2022 Policy and the 2023 Policy exclude coverage for contractual liability. Specifically, the 2022 Policy and the 2023 Policy provide:

> This insurance does not apply to:… "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages: That the insured would have in the absence of the contract or agreement; or Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided: Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

See Exhibits A and B.

30. The Counterclaim alleges causes of action for Breach of Express Warranties and Accounting. These causes of action are based upon excluded contractual liability and therefore there is no coverage pursuant to the 2022 Policy and the 2023 Policy.

<u>Failure to comply with Policy</u>

31. The 2022 Policy and the 2023 Policy require Defendant MCC to take certain affirmative steps upon notice of a claim or alleged occurrence. Specifically, the 2022 Policy and the 2023 Policy provide:

> *Duties In The Event Of Occurrence, Offense, Claim Or Suit. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include: How, when and where the "occurrence" or offense took place; The names and addresses of an injured persons and witnesses; and The nature and location of any injury or damage arising out of the "occurrence" or offense. If the claim is made or "suit" is brought against any insured, you must: Immediately record the specifics of the claim or "suit" and the date received; and Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable. You and any other involved insured must: Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit"; Authorize us to obtain records and other information; Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

<u>See</u> Exhibits A and B.

32. Defendant MCC was served with the Counterclaim on June 14, 2024. Therefore, this is latest date upon which Defendant MCC was aware of an alleged occurrence.

33. Defendant MCC did not notify Plaintiff regarding the Counterclaim or the Underlying Action until April 15, 2025.

34. As a result of Defendant MCC's failure to comply with the 2022 Policy and the 2023 Policy, there is no coverage pursuant to the 2022 Policy and the 2023 Policy.

<u>Contractors Special Conditions</u>

35. The 2022 Policy and the 2023 Policy include a Contractors Special Condition endorsement. Specifically, the 2022 Policy and the 2023 Policy provide:

> *As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"*
> *(1)    Received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor;*
> *(2)    Obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits of $ per occurrence;*
> *(3)    Obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and*
> *(4)    Obtained proof that all licenses and permits as required by local and/or state statute, regulation or ordinance are up to date.*
> *The insured must maintain the records evidence compliance with paragraphs (1) through (4) for a minimum of five years from the expiration date of this policy. If these records are not maintained, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf.*
> *The insurance provided by this policy shall be excess over and above any other valid and collectible insurance available to the insured under paragraph (2).*

See Exhibits A and B.

36. The Counterclaim alleges "Defendant MCC hired unskilled laborers to perform work which required a specialty contracting license at the Property. (The Counterclaim at ¶53).

37. Upon information and belief, Defendant MCC utilized the services of at least five (5) subcontractors at the Property.

38. Upon information and belief, Defendant MCC did not obtain written indemnity agreements from any of Defendant MCC's subcontractors at the Property.

39. Upon information and belief, Defendant MCC did not obtain certificates of insurance from any of Defendant MCC's subcontractors at the Property.

40. Upon information and belief, Defendant MCC did not obtain proof that all licenses and permits as required for Defendant MCC's subcontractors' work at the Property.

41. Upon information and belief, Defendant MCC did not obtain the required permits for Defendant MCC's work at the Property.

42. As a result of Defendant MCC's failure to comply with the 2022 Policy and the 2023 Policy, there is no coverage pursuant to the 2022 Policy and the 2023 Policy.

<u>Incomplete or Abandoned Work Exclusion</u>

43. The 2022 Policy and the 2023 Policy include an exclusion for incomplete or abandoned work. Specifically, the 2022 Policy and the 2023 Policy provide:

    *This insurance does not apply to:*

    *Incomplete or Abandoned Work*
    *Any allegation, claim or "suit" for "bodily injury" or "property damage":*

    *(1) Based on your failure to complete "your work". For purposes of this exclusion, "your work" will be deemed complete at the earliest of the following times:*
    > *(a) When all of the work called for in your contract has been completed.*
    > *(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*
    > *(c) When that part of the work done at a job site has been put to its intended use by any person or organization.*

    *"Your Work" will be deemed incomplete if it does not meet the definition of complete above.*

    *(2) Based on work you abandon for any reason. For purposes of this exclusion, "your work" will be deemed abandoned when any insured is alleged to have ceased, forsaken, left or deserted any work, project or jobsite for any reason, including, but not limited to:*
    > *(a) Nonpayment to the insured.*
    > *(b) Any insured, or any person or entity the insured works for, being forced off the project by any person or entity for any reason including civil unrest, project conditions, weather or natural disaster.*
    > *(c) Refusal by any person or entity to allow completion of the work.*

    <u>See</u> Exhibits A and B.

44. The allegations of the Counterclaim allege Defendant MCC either failed to complete its work at the Property and/or abandoned its work at the Property.

45. In the event that Defendant MCC either failed to complete its work at the Property or abandoned its work at the Property, then there is no coverage pursuant to the 2022 Policy and the 2023 Policy.

Punitive or Exemplary Damages Exclusion

46. The 2022 Policy and the 2023 Policy include an exclusion for punitive or exemplary damages. Specifically, the 2022 Policy and the 2023 Policy provide:

> *This insurance does not apply to:*
> *Punitive or Exemplary Damage*
> *Any sums that the insured becomes legally obligated to pay for punitive, exemplary or multiple damages.*

See Exhibits A and B.

47. The allegations of the Counterclaim and damages sought by Defendant Morris include punitive, exemplary and multiple damages, therefore there is no coverage for these damages, if any, pursuant to the 2022 Policy and the 2023 Policy.

Relief Sought

48. Plaintiff provided timely and written notice to Defendant MCC. See Exhibit D.

49. This Court has authority to grant declaratory relief and judgment and to declare the rights and other relations of these interested parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201 and, since this Court is sitting in diversity, pursuant to the South Carolina Uniform Declaratory Judgments Act, S. C. Code Ann. Section 15-53-10 et seq. and Section 15-53-40 relating specifically to construction of an insurance contract.

50. Plaintiff is entitled to a declaration that there is no coverage pursuant to the 2022 Policy and the 2023 Policy for the claims brought forth in the Underlying Action.

## FOR A SECOND CAUSE OF ACTION

## (Declaratory Judgment Action – the 2025 Policy)

51. Plaintiff reincorporates by reference, as if set forth at length herein, Paragraphs 1 through 50.

52. As Plaintiff alleges there is no coverage and no duty to defend pursuant to the 2025 Policy for the claims alleged in the Underlying Action.

### No Occurrence

53. The 2025 Policy provides coverage for "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and the "bodily injury" or "property damage" occurs during the policy period." See Exhibit C.

54. The 2025 Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Exhibit C.

55. The 2025 Policy was issued on January 16, 2025.

56. The Counterclaim was filed on June 14, 2024.

57. There was not an occurrence during the policy period of the 2025 Policy.

58. Moreover, Defendant MCC knew about the allegations of an occurrence prior to the policy period of the 2025 Policy.

59. The Counterclaim alleges causes of action for Unjust Enrichment, violations of the South Carolina Unfair Trade Practices Act, Breach of Implied Warranty of Workmanlike Services, Breach of Express and Implied Warranties, Declaratory Judgment, Accounting and Slander

of Title.  These causes of action are not based upon and do not allege occurrences and therefore there is no coverage pursuant to the 2025 Policy.

Work Product Exclusion

60. The 2025 Policy excludes coverage for damage to Defendant MCC's work product. Specifically, the 2025 Policy provides:

> *2. Exclusions…*
> *k. Damage To Your Product*
> *"Property damage" to "your product" arising out of it or any part of it.*
> *l. Damage To Your Work*
> *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*
> *This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*
> *"Your product":*
> *a. Means:*
> *(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*
> *(a) You;*
> *(b) Others trading under your name; or*
> *(c) A person or organization whose business or assets you have acquired; and*
> *(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*
> *b. Includes:*
> *(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*
> *(2) The providing of or failure to provide warnings or instructions.*
> *c. Does not include vending machines or other property rented to or located for the use of others but not sold.*
> *"Your work":*
> *a. Means:*
> *(1) Work or operations performed by you or on your behalf; and*
> *(2) Materials, parts or equipment furnished in connection with such work or operations.*
> *b. Includes:*
> *(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*
> *(2) The providing of or failure to provide warnings or instructions.*

<u>See</u> Exhibit C.

61. The Counterclaim alleges damages to Defendant MCC's work product and therefore there is no coverage pursuant to the 2025 Policy.

## Pending or Prior Litigation Exclusion

62. The 2025 Policy excludes coverage for pending or prior litigation. Specifically, the 2025 Policy provides;

> *This insurance does not apply to:*
> *Pending and Prior Litigation*
> *"Bodily injury," "property damage" or "personal and advertising injury" arising from all pending or prior litigation as well as all future claims arising out of said pending or prior litigation.*
> *For the purposes of this exclusion:*
> *(1) Injury or damage is known to any insured when any insured is aware or reasonably should be aware that the injury or damage has occurred; and*
> *(2) Knowledge of "bodily injury" or "property damage" arising from an "occurrence" or "personal and advertising injury" arising from an offense constitutes knowledge of all injury or damage caused by the same "occurrence" or offense.*

See Exhibit C.

63. The Counterclaims were pending prior to issuance of the 2025 Policy and therefore there is no coverage pursuant to the 2025 Policy.

## Contractors Special Conditions

64. The 2025 Policy includes a Contractors Special Condition endorsement. Specifically, the 2025 Policy provides:

> *As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"*
> *(5)   Received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor;*
> *(6)   Obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits of $ per occurrence;*

> *(7) Obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and*
> *(8) Obtained proof that all licenses and permits as required by local and/or state statute, regulation or ordinance are up to date.*
> *The insured must maintain the records evidence compliance with paragraphs (1) through (4) for a minimum of five years from the expiration date of this policy. If these records are not maintained, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf.*
> *The insurance provided by this policy shall be excess over and above any other valid and collectible insurance available to the insured under paragraph (2).*

See Exhibit C.

65. The Counterclaim alleges "Defendant MCC hired unskilled laborers to perform work which required a specialty contracting license at the Property. (The Counterclaim at ¶53).

66. Upon information and belief, Defendant MCC utilized the services of at least five (5) subcontractors at the Property.

67. Upon information and belief, Defendant MCC did not obtain written indemnity agreements from any of Defendant MCC's subcontractors at the Property.

68. Upon information and belief, Defendant MCC did not obtain certificates of insurance from any of Defendant MCC's subcontractors at the Property.

69. Upon information and belief, Defendant MCC did not obtain proof that all licenses and permits as required for Defendant MCC's subcontractors' work at the Property.

70. Upon information and belief, Defendant MCC did not obtain the required permits for Defendant MCC's work at the Property.

71. As a result of Defendant MCC's failure to comply with the 2025 Policy, there is no coverage pursuant to the 2025 Policy.

<u>Incomplete or Abandoned Work</u>

72. The 2025 Policy includes an exclusion for incomplete or abandoned work. Specifically, the 2025 Policy provides:

*This insurance does not apply to:*
*Incomplete or Abandoned Work*
*Any allegation, claim or "suit" for "bodily injury" or "property damage":*
 *(3) Based on your failure to complete "your work". For purposes of this exclusion, "your work" will be deemed complete at the earliest of the following times:*
  *(a) When all of the work called for in your contract has been completed.*
  *(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*
  *(c) When that part of the work done at a job site has been put to its intended use by any person or organization.*

*"Your Work" will be deemed incomplete if it does not meet the definition of complete above.*

 *(4) Based on work you abandon for any reason. For purposes of this exclusion, "your work" will be deemed abandoned when any insured is alleged to have ceased, forsaken, left or deserted any work, project or jobsite for any reason, including, but not limited to:*
  *(a) Nonpayment to the insured.*
  *(b) Any insured, or any person or entity the insured works for, being forced off the project by any person or entity for any reason including civil unrest, project conditions, weather or natural disaster.*
  *(c) Refusal by any person or entity to allow completion of the work.*

<u>See</u> Exhibit C.

73. The allegations of the Counterclaim allege Defendant MCC either failed to complete its work at the Property and/or abandoned its work at the Property.

74. In the event that Defendant MCC either failed to complete its work at the Property or abandoned its work at the Property, then there is no coverage pursuant to the 2025 Policy.

<u>Punitive or Exemplary Damages Exclusion</u>

75. The 2025 Policy includes an exclusion for punitive or exemplary damages. Specifically, the 2025 Policy provides:

> *This insurance does not apply to:*
> *Punitive or Exemplary Damage*
> *Any sums that the insured becomes legally obligated to pay for punitive, exemplary or multiple damages.*

<u>See</u> Exhibit C.

76. The allegations of the Counterclaim and damages sought by Defendant Morris include punitive, exemplary and multiple damages, therefore there is no coverage for these damages, if any, pursuant to the 2025 Policy.

<u>Relief Sought</u>

77. Plaintiff provided timely and written notice to Defendant MCC. <u>See</u> Exhibit D.

78. This Court has authority to grant declaratory relief and judgment and to declare the rights and other relations of these interested parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201 and, since this Court is sitting in diversity, pursuant to the South Carolina Uniform Declaratory Judgments Act, S. C. Code Ann. Section 15-53-10 et seq. and Section 15-53-40 relating specifically to construction of an insurance contract.

79. Plaintiff is entitled to a declaration that there is no coverage pursuant to the 2022 Policy for the claims brought forth in the Underlying Action.

WHEREFORE, Plaintiff prays that this Honorable Court issue an Order declaring there is no coverage pursuant to the 2022 Policy, the 2023 Policy and the 2025 Policy for the claims brought forth in the Underlying Action, and for such other and further relief as this Honorable Court may deem just and proper.

<u>*s/ Christopher C. Mingledorff*</u>
Christopher C. Mingledorff
South Carolina Bar No. 100390
S.C. District Court Bar No. 12034
MINGLEDORFF & PATTERSON, LLC
245 Seven Farms Drive, Suite 310, Box 13
Charleston, South Carolina 29492
(843) 471-1015 – Telephone
(843) 996-1403 – Facsimile
***Attorney for Plaintiff***

February 4, 2026
Charleston, South Carolina